**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

MID-SOUTH IMAGING & THERAPEUTICS, P.A.,

Plaintiff,

v.

SOUTHERN PAIN AND REGENERATIVE MEDICINE PC,

Defendant.

Case No.

**DEMAND FOR JURY TRIAL**

**VERIFIED COMPLAINT FOR INJUNCTIVE AND ALL OTHER RELIEF**

COMES NOW Plaintiff Mid-South Imaging & Therapeutics, P.A. ("MSIT"), together with Vascular Interventional Physicians, a division of MSIT (collectively with MSIT, "VIP" or "Plaintiff") by and through counsel, and files this Verified Complaint against Defendant Southern Pain and Regenerative Medicine P.C. ("Southern Pain" or "Defendant"), alleging as follows:

**NATURE OF THE ACTION**

1. This is an action at law and equity to remedy acts of: (1) trademark infringement and unfair competition under 15 U.S.C. §1125(a); (2) infringement and unfair competition under the common law of the State of Tennessee and the Tennessee Trademark Statute, Tenn. Code Ann. §47-25-512 and §47-25-513; (3) deceptive trade practices and unjust enrichment in violation of the common law of the State of Tennessee and the Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-104, *et. seq.*; and (4) tortious interference with business relations.

## THE PARTIES

2.   Plaintiff VIP is a Tennessee c-corporation with its principal place of business at 7600 Wolf River Blvd, Ste. 200, Germantown, TN 38138.

3.   Defendant Southern Pain is a Tennessee professional corporation with its principal place of business at 5683 Rex Rd, Memphis, TN, 38119. Dr. Thomas Hodgkiss ("Dr. Hodgkiss") is the registered agent for service of process for Southern Pain with a registered agent address of 921 Dent Road, Eads, TN 38028.

## JURISDICTION AND VENUE

4.   This Court has jurisdiction over the subject matter of this action because this action arises under the Federal Trademark Act, 15 U.S.C. §§1051-1127, and jurisdiction is conferred in accordance with 15 U.S.C. §1121.  Supplemental jurisdiction is proper over the causes of action arising under Tennessee law because they are substantially related to those causes of action over which the Court has original jurisdiction, pursuant to 28 U.S.C. §1367.

5.   Personal jurisdiction and venue are proper in this Court because Defendant has purposefully availed itself of the State of Tennessee and of this district by choosing to transact business herein. Moreover, Defendant's primary business operations are located in this district.

## FACTS

6.   VIP is a private practice radiology group of approximately fifty radiologists, in nine subspecialty areas.

7.   For more than fifty-five years, VIP has provided professional services to hospital systems, physician practices, and outpatients in Tennessee, Mississippi, and Arkansas.

8. In part, VIP offers highly specialized vascular procedures, including but not limited to interventional oncology, kyphoplasty, uterine fibroid embolization, endovenous laser therapy, prostate artery embolization, and treatment of peripheral artery disease.

9. VIP currently has three physical locations at (1) 6286 Briarcrest Ave., Suite 300, Memphis, TN 38120; (2) 55 Physician's Lane, Southaven, MS 38671; and (3) 4802 E. Johnson, Jonesboro, AR 72401.

10. Since at least 2019, VIP has used the mark "VIP" or VIP in interstate commerce in connection with its radiological and vascular services (the "Mark"). During this time, VIP has spent considerable capital on marketing, advertising, and promotion of its services, of which the Mark has been a centerpiece.

11. VIP markets its services through word of mouth, various advertising media, its website, and the internet.

12. VIP uses the Mark prominently in all of its marketing efforts. For example, the Mark appears throughout VIP's website, as evidenced by the below examples:







**Why Our Clients Believe in Us**

13. VIP also features the Mark prominently on its social media accounts, as evidenced by the following examples:




14. VIP owns and operates websites at <www.vipphysiciansmemphis.com/>, < www.vipfibroidteam.com/>, <www.vipprostateteam.com>, <www.vipvascularteam.com>, and <www.vipveinteam.com>.

15. VIP uses the Mark as part of its nomenclature for the various subspecialties at VIP, including VIP Fibroid Team, VIP Vascular Team, and VIP Prostate Team.

16. In addition to its common-law rights, VIP is also the owner of the following applications at the United States Patent and Trademark Office:

a. Application No. 99015363 for VIP;

b. Application No. 99015360 for VIP & Design  ; and

c. Application No. 99015351 for VIP Vascular Interventional Partners & Design

17. VIP is also the owner of the following trademarks at the Division of Business and Charitable Organizations for the State of Tennessee:

a. TM10433 and TM10434 for VIP;

b. TM100399 and TM100400 for VIP & Design 

; and

c. TM100402 for VIP Vascular Interventional Physicians & Design

18. And VIP is also the owner of the following trademarks in the State of Louisiana:

a. 12074038 for VIP;

b. 12073986 VIP & Design 

;and

c. 12073974 for VIP Vascular Interventional Physicians & Design

A chart with the above applications and registrations is attached hereto as "Exhibit A."

19. Through its extensive use of the Mark, VIP has generated significant and valuable goodwill and has come to be associated with the Mark, particularly in connection with radiological and vascular services in Tennessee, Arkansas, and Mississippi.

20. Despite VIP's use of the Mark at all times since at least 2019, upon information and belief, beginning in late 2024, Southern Pain began using the Mark by referring to itself as "Southern VIP".

21. Southern Pain currently has four physical locations at (1) 5683 S. Rex. Road, Memphis, TN 38119; (2) 5740 Getwell Rd., Bldg 9B, Southaven, MS 38672; (3) 1720 E. Reelfoot Ave., Ste. 200, Union City, TN; and (4) 221 Main Street, Fulton, KY 42041.

22. Southern Pain offers similar radiological and vascular services as VIP, including but not limited to interventional oncology, treatment of peripheral artery disease, kyphoplasty, and prostate artery embolization.

23. Indeed, the services offered by VIP and Southern Pain are so similar, in part, because the registered agent and founder of Southern Pain, Dr. Hodgkiss, previously worked for VIP providing healthcare services.

24. As a former employee of VIP, Dr. Hodgkiss, and therefore Defendant, know of the services offered by VIP and VIP's use of the Mark.

25. Nevertheless, Southern Pain now uses a nearly identical mark for identical services.

26. VIP and Southern Pain also target the same healthcare providers and patients in Tennessee and Mississippi.

27. Upon information and belief, Southern Pain markets its services through word of mouth, various advertising media, its website, and the internet.

28. Upon information and belief, since late 2024, Southern Pain has used the Mark prominently in all of its marketing efforts.

29. For example, the Mark appears throughout Southern Pain's website:



30. Southern Pain's website is aesthetically similar to VIP's website.

31. Upon information and belief, Southern Pain's website is intended to replicate the overall look and feel of VIP's site.

32. Southern Pain's social media also makes frequent use of the Mark, as evidenced by the following examples:





33. Southern Pain is the owner and operator of the website <www.southernvip.com>.

34. Just like VIP, Southern Pain has incorporated the Mark in the nomenclature for its subgroups, practices, and treatments. For example, Southern Pain advertises its "Southern VIP Foot Rescue."

35. Southern Pain has used the Mark in marketing and promotional materials (including but not limited to its website at <www.southernvip.com> and Facebook) in interstate commerce and those materials are available to and accessible by healthcare providers and patients in the markets where VIP is located, including Tennessee, Arkansas, and Mississippi.

36. Southern Pain's use of the Mark is deceptively similar, if not identical, to VIP's Mark in terms of appearance, sound, meaning, and connotation and is highly likely to cause confusion among healthcare providers and patients. In fact, providers and patients have been experiencing actual confusion since Southern Pain's unauthorized use of the Mark began.

37. Further, Southern Pain's use of the Mark falsely implies a connection, sponsorship, or affiliation between the goods and services that VIP and Southern Pain separately offer.

38. As one of many examples of the actual confusion caused by Southern Pain's unauthorized use of the VIP Mark, VIP received the attached referral order referring a patient to VIP after the patient requested to see Dr. John Scallions, a doctor affiliated with Southern Pain. *See Exhibit B, July 11, 2025 Referral Order.*

39. VIP has received many similarly misreferred patients as a result of the actual confusion caused by Southern Pain's unauthorized use of the Mark. *See e.g. Exhibit C, June 6, 2025 Referral Order; Exhibit D, July 22, 2025 Referral Order.*

40. VIP adopted the Mark prior to Southern Pain's adoption of it.

41. Southern Pain knew or should have known of VIP's Mark at the time Defendant adopted and began to use the Mark in commerce, in part because Dr. Hodgkiss is a former employee of VIP.

42. Defendant had actual and constructive knowledge of VIP's use of the Mark and VIP's registered and/or common law rights in the Mark at the time Defendant decided to use it in connection with Southern Pain's own goods and services.

43. At the very latest, Southern Pain became aware of VIP's Mark on or about June 12, 2025 when Defendant received the letter attached hereto as Exhibit E.

44. Despite knowing of VIP's senior and superior rights in the Mark, Defendant adopted the Mark, began to use it in commerce, and continues to use it in commerce, as of the filing of this Verified Complaint.

**COUNT I**

**VIOLATION OF THE LANHAM ACT, 15 U.S.C. §1125(a)**

45. The averments of Paragraphs 1 through 44 above are incorporated herein by reference as if set forth in their entirety.

46. Defendant's willful and deliberate use of the Mark constitutes trademark infringement and unfair competition with VIP, in violation of 15 U.S.C. §1125(a).

47. Southern Pain has engaged in unfair competition with VIP by, *inter alia*, advertising, promoting, displaying, offering for sale and/or distributing goods or services bearing the Mark.

48. Defendant's use of the Mark is a false designation of origin, is a false and misleading description or representation and is likely to cause mistake or to deceive as to the affiliation, connection or association between Defendant and VIP and/or as to the origin, sponsorship or approval of Defendant's goods and services.

49. Unless enjoined by this Court, Defendant will continue to infringe Plaintiff's Mark, compete unfairly with VIP, and cause further irreparable harm to VIP.

50. Defendant's conduct has caused and continues to cause irreparable harm to VIP that has no adequate remedy at law.

51. A preliminary and permanent injunction is an appropriate remedy for Defendant's unfair competition, but, in the alternative, VIP is entitled to recover from Defendant its actual damages (which have not yet been determined) or statutory damages.

## COUNT II

## VIOLATION OF TENNESSEE TRADEMARK AND UNFAIR COMPETITION LAW

52. The averments of Paragraphs 1 through 51 above are incorporated herein by reference as if set forth in their entirety.

53. Defendant is liable to VIP for Defendant's violation of Tennessee Code Annotated § 47-25-512 and Tennessee common law for trademark infringement, unfair competition and misappropriation.

54. Defendant's unauthorized use of the Mark is intended to enable Defendant to pass off Defendant's goods and services as those affiliated with or offered, approved or sponsored by VIP.

55. Defendant's conduct has caused and continues to cause irreparable harm to VIP that has no adequate remedy at law.

56. VIP is entitled to any and all remedies available pursuant to Tennessee law for trademark infringement, unfair competition and misappropriation, including but not limited to preliminary and permanent injunctive relief and/or damages (in an amount which have not yet been determined).

## COUNT III

## VIOLATION OF TENNESSEE DECEPTIVE TRADE PRACTICE LAW

57. The averments of Paragraphs 1 through 56 above are incorporated herein by reference as if set forth in their entirety.

58. Defendant has engaged in acts and practices that constitute a violation of the prohibition against deceptive trade practices as set forth at Tennessee Code Annotated §47-18-104 *et seq*.

59. Defendant's use of the Mark creates an unreasonable risk that patients and healthcare providers will conclude that there is an affiliation, connection or association between Defendant and VIP that does not exist.

60. The natural and probable effect of Defendant's use of the Mark is to enable Defendant to deceive and confuse the public.

61. Defendant's unauthorized use of the Mark, as described above, constitutes deceptive trade practice prohibited by Tennessee Code Annotated §47-18-104 *et seq*.

62. Defendant's conduct is willful and deliberate.

63. Defendant's unfair and deceptive practices, namely its use of the Mark, is of a recurring nature and harmful to patients and healthcare providers, the public at large and VIP.

64. Defendant's conduct constitutes unlawful, unfair, fraudulent and deceptive business practices and/or unfair, deceptive, untrue and misleading advertising.

65. Unless enjoined by this Court, Defendant will continue to engage in unfair and deceptive trade practices and cause further irreparable harm to VIP, healthcare providers, patients, and the public.

66. Defendant's conduct has caused and continues to cause irreparable harm to VIP that has no adequate remedy at law.

67. Defendant's conduct entitles Plaintiff to treble damages and attorney fees.

## COUNT IV

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

68. The averments of Paragraphs 1 through 67 above are incorporated herein by reference as if set forth in their entirety.

69. VIP has existing and/or prospective business relationships with healthcare providers and patients in Mississippi, Tennessee, and Arkansas.

70. Defendant, through Dr. Hodgkiss' former employment with VIP and through Defendant's participation in the healthcare marketplace in Mississippi, Tennessee, and Arkansas, has knowledge of VIP's relationships with healthcare providers and patients.

71. Defendant intended to cause the termination of VIP's business relationships.

72. Defendant used improper means to cause the termination of VIP's business relationships, including but not limited to (1) infringing on VIP's senior and pre-existing trademark rights in the Mark; (2) unfairly competing with VIP; and (3) engaging in deceptive trade practices.

73. Defendant's conduct has caused and continues to cause irreparable harm to VIP that has no adequate remedy at law.

74. A preliminary and permanent injunction is an appropriate remedy for Defendant's tortious interference, but, in the alternative, VIP is entitled to recover from Defendant its actual damages (which have not yet been determined).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mid-South Imaging & Therapeutics, P.A. (together with its subsidiary Vascular Interventional Physicians) (collectively "VIP"), respectfully requests that this Honorable Court:

1. Enter judgment in favor of VIP on all counts;

2. Find that VIP has valid and existing rights in the Mark and that Defendant's conduct described herein constitutes an infringement of VIP's valuable and incontestable intellectual property rights;

3. Find that Defendant has violated, 15 U.S.C. §1125(a) by infringing upon VIP's trademark rights;

4. Order Defendant, Defendant's agents, representatives, members, officers, employees, agents and representatives, and anyone acting on behalf of Defendant and all others in privity or acting in concert with Defendant, to immediately cease all use of the Mark in connection with radiological and vascular healthcare services and never to resume such use;

5. Issue a preliminary and permanent injunction enjoining Defendant's agents, representatives, members, officers, employees, agents and representatives, and anyone acting on behalf of Defendant and all others in privity or acting in concert with Defendant, from:

    a. further use in commerce of the Mark or any mark confusingly similar thereto (either alone or in combination with other words, names or symbols) in connection with the advertising, marketing or offering of radiological and vascular healthcare services;

    b. engaging in conduct that causes or is likely to cause confusion or mistake regarding the origin, source, sponsorship, affiliation or approval of Defendant's services;

    c. suggesting or implying, directly or indirectly, by using the Mark or otherwise, that Defendant's services are sponsored by, associated with, approved by, affiliated with or connected in any way to VIP;

    d. engaging in conduct that causes or is likely to cause the mistaken belief by patients or healthcare providers that there is a relation, association, affiliation or connection between VIP and Defendant or its respective goods and services;

  e. passing off, or inducing or enabling others to sell or pass off, Defendant's services as those of VIP;

  f. unfairly competing with VIP in violation of the Lanham Act or Tennessee law; and

  g. engaging in deceptive trade practices in violation of Tennessee law.

6. Award such other relief as the Court may deem appropriate to prevent consumers, the public and/or participants in the parties' industry from being confused, mistaken or deceived;

7. Award actual, multiple, exemplary, enhanced, statutory and/or punitive damages, interest and an accounting of and disgorgement of Defendant's profits, as permitted by 15 U.S.C. §1117(a) or otherwise;

8. Award treble damages for Defendant's willful and deliberate trademark infringement, unfair competition, and deceptive trade practices, and

9. Award interest, including pre- and post-judgment interest, costs of this action, and VIP's attorneys' fees as permitted by 15 U.S.C. §1117(a) or otherwise.

10. Any other relief to which this Court determines that Plaintiff VIP is entitled after a trial of this action.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

***THIS IS THE FIRST REQUEST FOR EXTRAORDINARY RELIEF.***

Respectfully Submitted,

John Golwen, BPR. No. 14324
Brian Garrott, BPR. No. 39034
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 1300
Memphis, Tennessee 38103
Tel: (901) 543-5903
Fax: (615) 742-6293
jgolwen@bassberry.com
brian.garrott@bassberry.com

Paige Waldrop Mills, No. 16218
BASS, BERRY & SIMS PLC
Suite 2800; 150 3rd Ave. South
Nashville, Tennessee 37201
Tel: 615-742-6200
Fax: 615-429-0429
pmills@bassberry.com

***Counsel for Plaintiff Mid-South Imaging & Therapeutics, P.A.***

**VERIFICATION**

I, Brian Barbeito, as the C.E.O. for Plaintiff Mid-South Imaging & Therapeutics, P.A., declare under penalty of perjury that I have reviewed the foregoing Complaint and that it is true and correct.

Executed on this the 12 day of September 2025.

Name: Brian Barbeito
Title: C.E.O.

47845688.5